IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 27, 2008

## STATE OF TENNESSEE v. LOUIS E. WHITECOTTON

**Direct Appeal from the Circuit Court for Sullivan County**
**No. S51077     R. Jerry Beck, Judge**

_____

**No. E2007-00335-CCA-R3-CD - Filed April 23, 2008**

_____

The defendant, Louis E. Whitecotton, was convicted of failure to timely register as a violent sexual offender, a Class E felony, and sentenced to three years in the Department of Correction. On appeal, he argues that the trial court erred in denying alternative sentencing. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Joseph F. Harrison, Assistant Public Defender, for the appellant, Louis E. Whitecotton.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and B. Todd Martin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

From 1980 to 2004, the defendant was incarcerated in the Virginia State Penitentiary while serving an effective forty-six-year sentence for rape, use of a firearm in the commission of a rape, and sodomy convictions. After the defendant was paroled on October 8, 2004, he resided at the Salvation Army in Bristol, Tennessee, and registered with the Bristol (Tennessee) Police Department as a violent sexual offender. In December 2004, he reported to the Bristol (Tennessee) Police Department that he was moving to Bristol, Virginia. On May 11, 2005, he applied to attend the National College of Business and Technology (NCBT) in Bristol, Tennessee, and began attending classes there on June 6, 2005. He did not register as a violent sexual offender with the Bristol (Tennessee) Police Department until August 29, 2005. Within forty-eight hours of establishing a

residence, becoming employed, or becoming a student in Tennessee, sexual offenders must register in person with the designated law enforcement agency having jurisdiction over the offender's residence, place of employment, or educational institution. Tenn. Code Ann. § 40-39-203(a)(1) (Supp. 2005).

## Trial

The parties stipulated that the defendant was a violent sexual offender as defined in Tennessee Code Annotated section 40-39-202, the NCBT is an institution of higher learning as defined in section 40-39-202, and the Bristol (Tennessee) Police Department is the law enforcement agency having jurisdiction over the NCBT.

Detective Aaron Blevins, a member of the Bristol (Tennessee) Police Department's Sex Offender Registry Team, testified that the defendant registered as a violent sexual offender on October 13, 2004. He identified a Tennessee Bureau of Investigation Sexual Offender Instruction Sheet, which instructed that offenders from another jurisdiction who become a student in Tennessee must register within forty-eight hours with the law enforcement agency having jurisdiction over the educational institution. The document was dated October 13, 2004, and signed by the defendant. Detective Blevins testified that the defendant began attending the NCBT on June 6, 2005, but did not register as a sexual offender until August 29, 2005, after Blevins contacted the defendant's Virginia parole officer and asked to meet with the defendant. When the defendant arrived at the police station, he was arrested. On cross-examination, Detective Blevins testified that when the defendant was arrested he said he did not know he was required to register.

Bristol (Tennessee) Police Department Sergeant David Kirkpatrick testified that he gave the defendant an instruction sheet and notice of his next registration date when he registered on October 13, 2004. He stated that the defendant notified him in December that he was moving to Bristol, Virginia. On cross-examination, Sergeant Kirkpatrick testified that once the defendant moved to Virginia in December 2004, his obligation to register in Tennessee ceased.

The defendant offered the testimony of Virginia parole officer Gary Todd, who supervised the defendant from the time he was released from the Virginia State Penitentiary in October 2004. He said the defendant initially lived at the Salvation Army in Bristol, Tennessee, before moving back to Bristol, Virginia. Todd stated that the defendant worked at two restaurants after his release from prison. He explained that the defendant's conditions of parole included notifying him of any change of address, meeting with him as instructed, attending counseling as required, and complying with the requirements of the sexual offender registry. Todd testified that, with the exception of failing to register in Tennessee when he began attending the NCBT, the defendant had complied with all of his parole conditions.

Todd said that when the defendant told him he intended to attend the NCBT, he did not tell the defendant that he would be required to register as a sexual offender in Tennessee because he was unaware of this requirement. He testified that he received a call from Detective Blevins on August

22, 2005, informing him that the defendant was required to register. He told the defendant about the registration requirement on Friday, August 26, 2005, and the defendant reported to the Bristol (Tennessee) Police Department the following Monday, August 29, 2005.

**Sentencing Hearing**

The fifty-one-year-old defendant testified that if he were granted alternative sentencing he believed he could regain his former job at Logan's Roadhouse, live at the Salvation Army in Bristol, Tennessee, and adhere to any terms and conditions imposed by the court. He said he did not have an alcohol or drug problem. He stated that while incarcerated in Virginia he received counseling which helped him feel empathy for his victims and understand how his actions had negatively impacted them. He testified that, after his release from prison in 2004, he timely registered as a sexual offender with the Bristol (Tennessee) Police Department and with the Bristol (Virginia) Police Department when he moved to Virginia in December.

The defendant testified that, after moving to Virginia, he maintained a job and decided to enroll in college to take computer courses because he had enjoyed learning about computers during his incarceration. He said he informed his parole officer, Gary Todd, of his plans to attend college, but Todd did not tell him about the sex offender registry requirement that resulted from his enrollment in college. He said there was no chance that he would ever again commit violent acts against women or fail to timely register as a sexual offender. He testified that he had lied about his offenses for ten years before having a change of heart during a parole interview in 1989 but had consistently told the truth and taken responsibility for his actions since then.

On cross-examination, the defendant related the circumstances of his prior convictions for rape and attempted rape. Regarding the former, he testified that he saw a woman jogging as he drove down a road. He parked his car and hid in a ravine along the victim's route, and when she jogged past he emerged and displayed a pellet gun, told her to get down into the ravine, and raped her. Regarding the attempted rape, he testified that he drove to a high school in Washington County, Virginia, and saw a female and a male sitting in a car in the parking lot. He followed the female into the high school and told her he was a janitor. She asked him for a broom, and he told her it was upstairs. Once upstairs the defendant displayed his pellet gun, told the female to go to the bathroom, followed her into one of the stalls, and attempted to rape her.

Gary Todd testified that from the time of his release on parole until his arrest for failure to timely register, the defendant attended weekly sexual offender counseling in Abingdon, Virginia, and had complied with all the requirements of the parole program.

Francis Belcher testified that she met the defendant when she worked as a caseworker at the Salvation Army in Bristol, Tennessee. She interacted with him on a daily basis and found that he was "very conscientious about doing what he needed to do." She stated that, in her opinion, the defendant was trying to live a law-abiding life and was a favorable candidate for probation. She said

-3-

that she no longer worked at the Salvation Army but would be available if the defendant needed assistance or supervision.

Pastor Darrell Bewley of the Bristol, Tennessee Shelby Street Church of God testified that the defendant began attending his church in 2004. He said he had many conversations with the defendant and found him to be very conscientious. Pastor Bewley stated that he believed the defendant was attempting to live a good, law-abiding life and would be a good candidate for probation. He said he would be available to help and guide the defendant.

At the conclusion of the hearing, the trial court denied alternative sentencing, stating:

> The Defendant in this case was originally convicted in the Commonwealth of Virginia for numerous offenses which are set out in the presentence report in some detail, including the manner in which some or all of them occurred.
>
> The Defendant received a total sentence of 45 years. He went to the state penitentiary, served 25 years, then he was paroled out of the Virginia Department of Corrections. At some point he did come to Tennessee and was registered as a sexual offender and reported to the Bristol Tennessee Police Department. . . .
>
> . . . [The Defendant] later determined to leave Tennessee and return to Virginia. Then this is where he got into difficulty, in that when he returned to attend school at a business college he did not report to the Tennessee authorities that he was going to school in the state of Tennessee, notwithstanding that he had filed a – that one of the exhibits at the original trial in this case was that he was instructed to reregister or register if he became a student in the state of Tennessee.
>
> . . . .
>
> But a sidelight to that is that previously when – and again in the presentence report his prior – some of his prior offenses are described in some detail. And there seems to be a pattern that he had – one of the offenses occurred actually inside Patrick Henry High School at Washington County, Virginia. This school's on Hillman Highway approximately one mile from Emory and Henry College, an educational area.
>
> On another offense he was convicted of . . . sex offense [sic] involving a Virginia Intermont Student. Virginia Intermont's located in Bristol, Virginia. And also that when he picked the – or ever how he approached the victim she was walking near Virginia High School which is – although not close to Virginia Intermont College, it's certainly within walking distance without a great deal of strain to Virginia High School.

In this case the Defendant returned to the state of Tennessee, ostensibly to attend college, and did not report. . . . And I'm just pointing out the coincidence that, of all things, he's coming to Tennessee as to attend college, but in these other events he's been involved in involved – at least two of them involved getting around educational institutions, either colleges or high schools.

. . . .

The Defendant has expressed sorrow that he didn't report. Indicated he had every intent to report that he was attending school. Basically the strategy during the trial before the jury was the Defendant was not informed orally, at least, to – by his probation officer in Virginia, Mr. Todd, of the need to register. Notwithstanding that allegation, the State did put forward – I think all parties agreed he did sign a paper indicating if he attended college – although the paper itself's not been introduced, that if he attended college or school in the state of Tennessee he needed to register. He says he didn't even think about it when he signed it, or didn't read it. I don't know which.

In any case, the Defendant – his probation officer has testified for the Defendant that he did well except for this event. His – a counselor describing herself as a social worker at the Salvation Army where he lived a period of time has indicated he showed remorse or at least an intent to better himself and get his prior criminal record behind him. His preacher, Rev. Bewley, testified on his behalf.

Nonetheless, the Defendant had not been released from prison that long. He still had 20 years to serve on his sentence. The Virginia authorities evidently have a warrant outstanding for parole violation as a result of the jury conviction in this case.

Considering the Defendant's prior record which is not only a serious record in terms of length, it is also a serious record in terms of violence which the Defendant fully admits. And probably one of the greatest violence [sic] that can be inflicted in that regard.

The Court's of the opinion that, although he has worked since being released, he has other things in his past, including a court martial for being drunk on duty or drinking while on duty might be a better word as set out in the report. He – he's just going to have to serve his sentence. I'm going to deny probation, alternative sentencing in all forms and kinds, including the potentiality of residential community corrections. Just don't think it would benefit the Defendant or the community . . . our community.

# ANALYSIS

The defendant argues that the trial court erred in denying him alternative sentencing. He asserts that the trial court did not properly evaluate his susceptibility to rehabilitation or treatment and placed improper weight on his prior criminal record. The State responds that the trial court's determination that the defendant serve his sentence in confinement is correct.

When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous. If our review reflects that the trial court, following the statutory sentencing procedure, imposed a lawful sentence, after having given due consideration and proper weight to the factors and principles set out under the sentencing law and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed upon the defendant is ten years or less. Tenn. Code Ann. § 40-35-303(a) (2006). Even if eligible, however, the defendant is not automatically entitled to probation as a matter of law. See id. § 40-35-303(b). The burden is on the appellant to show the denial of probation was improper. See State v. Summers, 159 S.W.3d 586, 599-600 (Tenn. Crim. App. 2004) (citing Ashby, 823

S.W.2d at 169); see also State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997) (stating that "[a] criminal defendant seeking full probation bears the burden on appeal of showing the sentence actually imposed is improper, and that full probation will be in both the best interest of the defendant and the public").

There is no bright line rule for determining when a defendant should be granted probation. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1 (Tenn. 2000). Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). Another appropriate factor for a trial court to consider in determining whether to grant probation is a defendant's credibility or lack thereof, as this reflects on the defendant's potential for rehabilitation. Id.

Sentences involving confinement should be based on the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1) (2006).

In sentencing the defendant, the trial court applied two enhancement factors: (1) the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; and (2) the defendant was released on parole when the offense was committed. See Tenn. Code Ann. § 40-35-114(1), (13)(B) (2006). The court found as mitigating factors that the defendant's criminal conduct neither caused nor threatened serious bodily injury; substantial grounds exist tending to excuse or justify the conduct, though failing to establish a defense; and that the defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct. See id. § 40-35-113(1), (3), (11). The court weighed the enhancement and mitigating factors, according slight weight to the latter two mitigating factors, and sentenced the defendant to three years in the Department of Correction.

We note initially that the defendant was sentenced as a Range II, multiple offender and was therefore ineligible for the statutory presumption favoring alternative sentencing. See Tenn. Code

Ann. § 40-35-102(6)(A) (2006). Furthermore, the defendant was ineligible for probation or alternative sentencing until he served ninety days in confinement, the minimum sentence for first offense failure to timely register. See id. § 40-39-208(b), (c).[1]

The defendant argues that the judgment of the trial court should be reversed because the record does not reflect that the court considered the defendant's amenability to rehabilitation or treatment. He contends that "the record in this case demonstrated that the [defendant] was benefiting [sic] not only himself but also society by his efforts to become a productive law abiding citizen." We disagree that the trial court failed to consider the defendant's potential for rehabilitation and treatment. Although the court did not explicitly address this particular factor, the record reflects that the court evaluated the testimony of the defendant, his probation officer, his Salvation Army caseworker, and his pastor, as well as the defendant's prior criminal record, in determining that alternative sentencing was inappropriate. The court accorded weight to three mitigating factors proposed by defense counsel and declined to use several minor misdemeanor convictions to enhance the defendant's sentence. However, the court also noted that the incidents leading to two of the defendant's prior sexual offense convictions took place near educational institutions and that his current conviction was for failing to timely report that he had begun attending an educational institution. Our review of the sentencing hearing transcript reveals that the trial court properly considered the defendant's amenability to rehabilitation and treatment.

The defendant also asserts that he "would not denigrate the serious nature of his criminal record, but would submit that the [trial court] improperly weighed this factor considering that most of the offenses occurred fairly close in time and that all these convictions are quite remote given his twenty-five years incarceration since they were entered." He contends that he "does not have a long history of criminal conduct" and that the remoteness of his convictions limits their probative value.

The defendant's prior criminal record includes convictions for sodomy, rape, use of a firearm in the commission of a rape, first degree criminal sexual conduct, abduction, and assault and battery. From the evidence presented at the sentencing hearing, the trial court could have found that confinement was necessary to protect society given the defendant's long history of criminal conduct. See Tenn. Code Ann. § 40-35-103(1)(A). The defendant has not carried his burden of showing that the trial court's denial of alternative sentencing was erroneous and is not entitled to relief.

---

[1] Tennessee Code Annotated section 40-39-208 was amended effective August 1, 2005, to require a period of mandatory confinement before alternative sentencing may be imposed. 2005 Tenn. Pub. Acts ch. 316, § 4. The defendant was indicted for failing to register as a sexual offender from June 6, 2005 to August 9, 2005. Failure to timely register as a sexual offender is a continuing offense. State v. Flatt, 227 S.W.3d 615, 621 (Tenn. Crim. App. 2006). Because the continuing offense was ongoing when the amendment to section 40-39-208 took effect, the defendant was subject to punishment under the amended act. See Agee v. State, 111 S.W.3d 571, 576-77 (Tenn. Crim. App. 2003) (continuing offenses, such as conspiracy, which continue beyond the effective date of an amending law may be punished under the amended law).

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE